IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 10-00027-03-CR-W-ODS |
| | ) | |
| WOODROW McCOY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S
MOTION TO SUPPRESS ALL IDENTIFICATION TESTIMONY**

Before the court is Defendant's Motion to Suppress All Identification Testimony. Defendant moves the Court to suppress the identification made by Alvin Woodard on grounds that the procedure was impermissibly suggestive and created a very substantial likelihood of irreparable misidentification. For the following reasons, Defendant's motion to suppress should be denied.

*I. BACKGROUND*

On January 27, 2010, the Commerce Bank in Parkville, Missouri was robbed. Law enforcement pursued a gold Infiniti SUV involved in the robbery until it crashed into an embankment. One of the SUV's occupants was apprehended and arrested, but the other fled the scene. Later that same afternoon Alvin Woodard, an individual who lived one half block from where the SUV had come to rest, contacted law enforcement to report that his truck had been stolen. FBI Special Agent Mike West interviewed Mr. Woodard about the incident and later showed him a single photograph of Defendant. Mr. Woodard positively identified Defendant as the individual who stole his truck.

1

An indictment was returned against Defendant on February 3, 2010. On December 20, 2010, Defendant filed a motion to suppress (Doc. No. 74). The government responded to Defendant's motion on December 23, 2010 (Doc. No. 80). I conducted an evidentiary hearing on April 5, 2011. The government appeared by Assistant United States Attorneys Bruce Clark and Joseph Vanover. Defendant was present, represented by appointed counsel Susan Hunt. The government called the following witnesses to testify: (1) Alvin Woodard; (2) FBI Special Agent Leena Ramana; and (3) FBI Special Agent Mike West. The following exhibits were marked and admitted into evidence:

    Government's Exhibit 1:    Driver's license photo of McCoy;
    Government's Exhibit 2:    Booking photo of McCoy;
    Government's Exhibit 3:    Photo of front of Woodard garage;
    Government's Exhibit 4:    Photo of side of Woodard garage;
    Government's Exhibit 5:    Photo from inside Woodard garage;
    Government's Exhibit 6:    Photo from inside Woodard garage looking out;
    Government's Exhibit 7:    FBI 302 - Interview with Alvin Woodard.

At the conclusion of the hearing, I told the parties I would allow them additional time to locate a record referenced by Special Agent Ramana during her testimony.

On April 27, 2011, Defendant moved to reopen the suppression hearing (Doc. No. 108). Defendant's motion was granted and an evidentiary hearing was conducted on June 29, 2011. The government appeared by Assistant United States Attorney Bruce Clark. Defendant was present, represented by appointed counsel Susan Hunt. The government called FBI Special Agent Leena Ramana to testify. The following exhibit was marked and admitted into evidence:

    Government's Exhibit 1:    FBI report.

I again left the record open at the conclusion of the hearing to allow the government time to determine if any additional reports were generated.

A third evidentiary hearing on Defendant's motion to suppress was held on August 15, 2011

(Doc. No. 132). The government appeared by Assistant United States Attorneys Bruce Clark and Joseph Vanover. Defendant was present, represented by appointed counsel Susan Hunt. The government called FBI Criminal Intelligence Analyst Kendra Kingsbury and FBI Chief Security Officer Ray Errington to testify.

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact.

1. Following a robbery of Commerce Bank at approximately 10:20 a.m. on January 27, 2010, law enforcement officers pursued a gold Infiniti SUV that contained the robbers (04/05/11 Tr. at 40, 46). The SUV ended up on an embankment on North 33rd Street at approximately 10:40 a.m. (04/05/11 Tr. at 41, 46). One occupant was arrested, while another fled the scene (04/05/11 Tr. at 42-43). A white Nike tennis shoe was found within a couple of feet of the SUV (04/05/11 Tr. at 42).

2. The location where the SUV came to rest was approximately half a block away from the residence of Alvin Woodard (04/05/11 Tr. at 42).

3. Mr. Woodard's residence has a detached garage. The garage door does not have windows; there are two windows in the garage, however -- a small, diamond-shaped window on the side door and a 4x5 window on one of the walls (04/05/11 Tr. at 31). The interior walls of the garage are dark in color (04/05/11 Tr. at 30-31).

4. On January 27, 2010, Mr. Woodard entered his garage through the side door (04/05/11 Tr. at 4-5, 7, 11). A yellow GMC truck and a red Toyota truck were parked inside the garage. The garage door was closed (04/05/11 Tr. at 8). Mr. Woodard walked behind the yellow

truck (as depicted in Government's Exhibit 3), and noticed a male laying inside his red truck (also depicted in Government's Exhibit 3) (04/05/11 Tr. at 7-8). He turned around and walked out the side door (04/05/11 Tr. at 8). As Mr. Woodard was closing the door, he fell to the ground and could not get up (04/05/11 Tr. at 8-9). Mr. Woodard was laying on the ground on his stomach (04/05/11 Tr. at 33).

5. As Mr. Woodard tried to get up, he saw the male who was laying inside the red truck look out the diamond-shaped window on the side door (04/05/11 Tr. at 11; Gvt. Exhs. 3, 5). Mr. Woodard was able to see the male's face well (04/05/11 Tr. at 11, 12). The male opened the side door; Mr. Woodard looked at the male and told him that he could not get up due to his arthritis (04/05/11 Tr. at 9-11).

6. The male then pulled Mr. Woodard back inside the garage (04/05/11 Tr. at 10, 11, 12). Mr. Woodard had his back toward the male's face during this time (04/05/11 Tr. at 34). Mr. Woodard got up and stood at the back of the yellow truck while the male closed the side door to the garage (04/05/11 Tr. at 12-14). The male was to Mr. Woodard's left and was within a one-foot distance (04/05/11 Tr. at 15). Due to light coming through the window on the side door, Mr. Woodard could still see the male although he was trying to cover his face with his shirt (04/05/11 Tr. at 16, 22, 35).

7. Mr. Woodard told the male he needed to leave; the male told him to give him keys to a truck (04/05/11 Tr. at 16). Mr. Woodard took a key off his key ring and handed it to the male (04/05/11 Tr. at 16). The male was approximately one foot away and Mr. Woodard could see his face (04/05/11 Tr. at 16-17, 22, 36).

8. The male asked Mr. Woodard for his jacket, cap and shoes (04/05/11 Tr. at 19). Mr.

4

Woodard gave him his jacket and cap (04/05/11 Tr. at 19).

9. At the male's direction, Mr. Woodard then walked between the trucks to the front of the garage (04/05/11 Tr. at 18). The view from Mr. Woodard's position is depicted in Government's Exhibit 6 (04/05/11 Tr. at 18-19).

10. The male then opened the door to start the red Toyota truck, walked to the back of the garage to raise the garage door, turned around and walked back to the truck (04/05/11 Tr. at 20-21). When the male walked back to the truck after raising the garage door, he was walking directly toward Mr. Woodard (04/05/11 Tr. at 21). Mr. Woodard could see the male fairly well due to light coming in the open garage door (04/05/11 Tr. at 21). The male got into the truck and backed out of the garage (04/05/11 Tr. at 21-22). As the truck cleared the garage and was in complete daylight, Mr. Woodard got a really good view of the male's face (04/05/11 Tr. at 22, 25).

11. The period of time from when Mr. Woodard first saw the male laying in his red truck until the male drove away spanned three to four minutes (04/05/11 Tr. at 23-24).

12. Mr. Woodard reported the theft of his truck (04/05/11 Tr. at 24).

13. Special Agent Mike West interviewed Mr. Woodard about the incident (04/05/11 Tr. at 55). Mr. Woodard described the individual who took his truck as a black male, 5' 6" tall, medium build, approximately 200 pounds, 35-46 years old, and as having short black hair and a mustache (04/05/11 Tr. at 57; 04/05/11 Gvt. Exh. 7). He further stated the individual was wearing a white sweatshirt, blue jeans, and a white tennis shoe on only one foot (04/05/11 Tr. at 57; 04/05/11 Gvt. Exh. 7). Special Agent West then left Mr. Woodard's residence (04/05/11 Tr. at 58).

14. Law enforcement determined the Infiniti SUV that came to rest on the embankment near Mr. Woodard's residence was registered to Equalia Campbell (06/29/11 Tr. at 4). FBI Special Agents Mike Mrachek and Dirk Tarpley went to the address to which the vehicle was registered (06/29/11 Tr. at 4). Ms. Campbell was not home; however, her son Randy Powell was there (06/29/11 Tr. at 4). Mr. Powell told Special Agents Mrachek and Tarpley that he last saw the Infiniti SUV being driven by his mother's boyfriend (06/29/11 Tr. at 4). Mr. Powell identified his mother's boyfriend as a black male named either "Woody" or "Woodrow" (06/29/11 Tr. at 4). Special Agents Mrachek and Tarpley conveyed this information to FBI Criminal Intelligence Analyst Kendra Kingsberry (06/29/11 Tr. at 4; 08/15/11 Tr. at 3-5).

15. Ms. Kingsberry performed a series of searches using the FBI's Google-like database and Automated Case System with the identifiers "black male," "Woody" and "Woodrow" (06/29/11 Tr. at 4, 6-7; 08/15/11 Tr. at 13). She was also able to view the build of the suspects from Commerce Bank's surveillance video (08/15/11 Tr. at 5). The search generated an electronic communication that provided full identifiers (i.e., date of birth, social security number, FBI number) for an individual named "Woodrow McCoy" (06/29/11 Tr. at 5; 08/15/11 Tr. at 5; 06/29/11 Gvt. Exh. 1).

16. Ms. Kingsberry used these identifiers to access Defendant's driver's license photo from the State of Kansas (06/29/11 Tr. at 6; 08/15/11 Tr. at 7-8). Special Agent Ramana sent the photograph to Special Agent Mike West's cell phone early afternoon and asked him to show the photograph to Mr. Woodard (04/05/11 Tr. at 43-44, 50).

17. A report showing the different queries Ms. Kingsberry ran was not generated (08/15/11 Tr.

at 5-6). The report showing that Ms. Kingsberry accessed the databases on January 27, 2010 was only kept for ninety days (08/15/11 Tr. at 13-14).

18. Between 3:00 p.m. and 4:00 p.m., Special Agent West returned to Mr. Woodard's residence to show him the picture and ask if it was the male who had taken his truck (04/05/11 Tr. at 26, 27, 29, 43-44, 58-59; 06/29/11 Tr. at 7; 04/05/11 Gvt. Exh. 1). Special Agent West showed Mr. Woodard the picture on his Blackberry phone (04/05/11 Tr. at 58-59). Mr. Woodard positively identified the individual as the male who was in his garage earlier that day and who stole his truck (04/05/11 Tr. at 26-27, 28, 29, 44, 59). Mr. Woodard was certain about the identification (04/05/11 Tr. at 29).

19. The FBI spoke to the owner of the SUV, Ms. Campbell, who stated Defendant had the vehicle that day (04/05/11 Tr. at 52-53).

20. Defendant was arrested on January 28, 2010 (04/05/11 Tr. at 45; 04/05/11 Gvt. Exh. 2). A single key to Mr. Woodard's red Toyota truck was found in Defendant's jacket (04/05/11 Tr. at 45).

### III. LEGAL ANALYSIS

Due process challenges to an out-of-court identification are reviewed using a two-part test. First, the Court determines if the identification procedure was "impermissibly suggestive." United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003). See also United States v. Hines, 387 F.3d 690, 694 (8th Cir. 2004); United States v. Tucker, 169 F.3d 1115, 1117 (8th Cir. 1999); United States v. Johnson, 56 F.3d 947, 953 (8th Cir. 1995); United States v. Murdock, 928 F.2d 293, 297 (8th Cir. 1991); United States v. Donahue, 948 F.2d 438, 441 (8th Cir. 1991); United States v. Henderson, 719 F.2d 934, 936 (8th Cir. 1983). If it was, the Court must then determine whether,

7

considering the totality of the circumstances, the suggestive procedure created "a very substantial likelihood of irreparable misidentification." Williams, 340 F.3d at 567 (citations omitted). See also Hines, 387 F.3d at 694; Tucker, 169 F.3d at 1117; Johnson, 56 F.3d at 953; Murdock, 928 F.2d at 297; Donahue, 948 F.2d at 441; Henderson, 719 F.2d at 936. The Eighth Circuit has held that single photograph arrays are impermissibly suggestive, Ruff v. Wyrick, 709 F.2d 1219, 1220 (8th Cir. 1983), and the government has conceded this point. Analysis, therefore, focuses on the second part of the test -- the likelihood of misidentification. In making this determination, the Court must consider the following factors:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

Williams, 340 F.3d at 567 (quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)). See also Hines, 387 F.3d at 694; Tucker, 169 F.3d at 1118; United States v. Mack, 92 F.3d 637, 642 (8th Cir. 1996); Johnson, 56 F.3d at 954 (8th Cir. 1995); Murdock, 928 F.2d at 297; Henderson, 719 F.2d at 937.

In this case, the totality of the circumstances demonstrate that the single photograph array did not create a substantial risk of misidentification. Mr. Woodard's encounter with Defendant lasted three to four minutes. During this time, he saw Defendant's face on several occasions. Mr. Woodard could see Defendant's face well through the window on the side door to the garage. They were approximately one foot apart during their conversation about the key to Mr. Woodard's truck and the natural light from the windows allowed Mr. Woodard to see Defendant's face. Mr. Woodard was also able to see Defendant "fairly well" as Defendant walked toward him after opening the

garage door. He was able to get a really good view of Defendant's face as Defendant backed the truck out of the garage and into complete daylight. Although the precise timing is unknown, the record makes clear that Special Agent West showed Mr. Woodard the photograph no more than five hours after the incident occurred. Mr. Woodard was certain that the individual in the photograph was the same person who was in his garage earlier that day and who stole his truck. Defendant's motion to suppress this identification should be denied.

## IV. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
September 28, 2011